ANGELA MAJOR,

                Plaintiff,

v.                               **DECISION AND ORDER**
                                       12-CV-304S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

1. Plaintiff challenges an Administrative Law Judge's ("ALJ") decision, dated October 15, 2010, wherein the ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Plaintiff protectively filed an application for supplemental security income in January 2009, alleging that she became disabled beginning September 4, 2008. She now contends that the ALJ's determination is not based upon substantial evidence, and reversal is warranted.

2. On October 5, 2010, the ALJ held a hearing at which Plaintiff and a vocational expert testified. After consideration of the evidence, including Plaintiff's medical records, the ALJ denied Plaintiff's application for supplemental security income. On February 13, 2012, the Appeals Council denied Plaintiff's request for review after consideration of additional evidence. Plaintiff filed the current civil action challenging Defendant's final decision in this Court on April 11, 2012.

3. Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on October 1, 2012. Defendant also moved for such judgment in its favor on the same date. This Court finds the matter fully briefed and

1

oral argument unnecessary. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible based on the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert denied 459 U.S. 1212 (1983).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8.  Although the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since January 7, 2009, the date of her protective application (R. 42);[1] (2) Plaintiff has the following severe impairments: "diabetes, chronic low back pain, knee pain, calcaneal spur, hypercholesterolemia, cognitive disorder NOS, depressive disorder NOS and attention deficit/hyperactivity disorder and anxiety" (R. 42); (3) neither these impairments nor any combination of these impairments meets or medically equals a recognized disabling impairment under the regulations (R. 42-44); (4) Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work with certain limitations, such as the option to sit or stand alternatively (R. 44-48); and (5) although Plaintiff cannot perform any past relevant work, she retains the ability to perform other jobs, such as surveillance system monitor or telemarketer. (R. 49-50.)

10. Plaintiff contends that remand is required because the ALJ failed in his affirmative duty to develop the record with respect to Plaintiff's cognitive disorder, which

---

[1]Citations to the administrative record will be designated as "R."

the ALJ found to be a severe impairment, and further failed to evaluate her mental impairments in accordance with Listing 12.02 of the Listing of Impairments, 20 C.F.R. § 404 subpt. P. app. 1. (Pl's Mem of Law at 13-14, Docket No. 7-1.) Initially, although the ALJ referenced only Listings 12.04 and 12.06, which pertain to affective and anxiety related disorders respectively, the "B" and "C" criteria for all three listings are identical. 20 C.F.R. § 404 subpt. P. app. 1. Thus, the ALJ did evaluate Plaintiff's cognitive impairment in relation to Listing 12.02. (R. 42-44.)

Nonetheless, there is merit to Plaintiff's argument, although inartfully framed, that the ALJ failed to appropriately develop the record with respect to Plaintiff's mental impairments. An ALJ has the affirmative duty to request RFC assessments from treating sources, even where the record contains an otherwise complete medical history or where, as here, a claimant is represented by counsel. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); Johnson v. Astrue, 811 F. Supp. 2d 618, 630 (E.D.N.Y. 2011); see 20 C.F.R. 404.1512(d) ("every reasonable effort to help you get medical reports from your own medical sources" will be made). Indeed, "it is not sufficient for the ALJ simply to secure raw data from the treating physician." Hallett v. Astrue, No. 11-CV-1181, 2012 WL 4371241, *6 (D. Conn. Sept. 24, 2012). This is because:

> [t]he ALJ's duty to assist a claimant in obtaining complete medical records works in tandem with the so-called "treating physician rule," which requires the ALJ to grant controlling weight to the opinion of a claimant's treating physician if the opinion is well supported by medical findings and is not inconsistent with other substantial evidence.

Rosado v. Barnhart, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) (citing 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2)).

Plaintiff asserts that the "matter should be remanded for consultation with a medical

expert." (Pl's Mem of Law at 14.) The record before the ALJ, however, contained a report by two treating psychologists based on an August 2010 evaluation, and this report was considered in the ALJ's determination. (R. 47, 332-334.) The evaluation indicated that Plaintiff's cognitive screening test results showed performance below expected levels for someone of her age and education. (R. 333.) Plaintiff also demonstrated "problems with attention, memory, expressive language, executive function, and visuospatial process." (Id.) Based on the psychologists' report, the ALJ found that Plaintiff had moderate difficulties with "concentration, persistence or pace," one of the four "B" criteria to be evaluated in accordance with Listing 12.02.[2] (R. 43.) Further, although the ALJ determined that Plaintiff had only mild difficulties with daily living and social functioning, he noted that Plaintiff "may have problems with her expressive receptive language." (R. 43.) The ALJ determined that, because Plaintiff's mental impairments did not result in at least two marked limitations, the "B" criteria were not satisfied. (R. 43.) Finally, the ALJ stated that he was utilizing these same findings regarding mental limitations in determining Plaintiff's RFC. (R. 44); see 20 C.F.R. § 404.1520a(c)(3) (requiring that functional mental limitation be evaluated with respect to the same four functional areas as the "B" criteria).

Problematic is the fact that the psychologists concluded in their August 2010 evaluation, prepared a little over a month prior to the hearing, that a "comprehensive neuropsychological evaluation" was necessary to obtain objective data for identifying "the pattern and *severity*" of Plaintiff's cognitive impairments. (R. 334 (emphasis added).) The

---

[2] A disability based on an organic mental disorder is found where the loss of specific cognitive ability or affective changes is accompanied by, among other things, at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated extended episodes of decompensation. 20 C.F.R. § 404 subpt. P. app. 1., Listing 12.02(A),(B).

6

psychologists therefore rendered no final opinions as to Plaintiff's mental limitations. As such, by basing findings on data that Plaintiff's treating psychologists found insufficient to support a diagnosis, the ALJ improperly substituted his own judgment for competent medical opinion. Rosa, 168 F.3d at 79. The appropriate course would have been to develop the record on this issue. Id.

Notably, Plaintiff underwent further evaluation in December 2010, approximately three months after the hearing, and a report of this evaluation was submitted in support of Plaintiff's unsuccessful bid for review by the Appeals Council. (R. 1-4, 393-398.) In this report, the treating psychologist detailed more further examination findings with respect to, among other things, Plaintiff's ability to maintain attention and process information, memory, and language skills. (R. 395-396.)

The Court therefore finds remand warranted for the ALJ to consider the new evaluation of the treating psychologist and, if necessary, further develop the record by obtaining additional information or holding another hearing. Notably, any conclusion regarding Plaintiff's mental limitations will likely affect not only any conclusion regarding mental limitations, but also a vocational expert's opinion regarding available jobs, particularly where the vocational expert testified at Plaintiff's initial hearing that no jobs would be available if she was consistently off task twenty-percent of the time. (R. 33-34.)

11.     Contrary to Plaintiff's further contention, however, the ALJ did not selectively evaluate the medical opinion of Plaintiff's treating physician by ignoring evidence contrary to his determination. (Pl's Mem of Law at 16-20.) Primarily at issue is the ALJ's granting of "little weight" to part of the July 2009 medical source statement of Plaintiff's primary physician Dr. Brown. (R. 48; Pl's Mem of Law at 17-20.) As noted above, a treating

7

physician's opinion is given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527 (d)(2); Clark v. Comm'r of Social Sec., 143 F.3d 115, 118 (2d Cir. 1998). Contrary to Plaintiff's argument, the ALJ's conclusion that this assessment by Dr. Brown appeared to be based on Plaintiff's subjective complaints, rather than objective testing, is not improperly speculative. Dr. Brown assessed that Plaintiff could sit for only three hours per work day due to pain in her back (339), but the supporting medical records for March and June 2009, although noting "back pain," reflect neither subjective complaints nor objective diagnoses related to Plaintiff's ability to sit for prolonged periods of time. (345-348.) Indeed, Plaintiff reported to treating physicians at Strong Memorial Hospital in May and June 2009 that sitting was an alleviating factor, and that she in fact sat all day because it was "the only way to control her pain." (R. 310, 314.)

Further, although Dr. Brown asserted that the assessment of Plaintiff's sitting/standing/walking ability was based on MRI findings, the relevant medical records from that office indicate that the last MRI had been "many years ago." (339, 346.) An MRI was conducted in July 2009, but the report was not finalized until July 31, 2009, after Dr. Brown's medical source statement was completed. (R. 317-319, 343.) Finally, this physician completed the remaining objective sections of the assessment with references to Plaintiff's own descriptions and quotes from Plaintiff regarding her pain. (R. 338, 340-343.) The ALJ's determination that this treating physician's medical opinion was not based on objective medical evidence is therefore supported by the record.

12. Finally, remand would not be warranted based on the ALJ's failure to state

8

the frequency with which Plaintiff needed to alternate between sitting and standing. (Pl's Mem of Law at 19.) Plaintiff is correct that, "[b]ecause the need to alternate between sitting and standing could decrease the jobs that a claimant could perform, '[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.'" Kouadio v. Astrue, No. 08-CV-881A, 2010 WL 4922672, *6 (W.D.N.Y. Dec. 2, 2010) (quoting S.S.R. 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996)). Here, as presented to the vocational expert at the hearing and as stated in his decision, the ALJ stated that Plaintiff required the ability "to sit or stand alternatively, but would not have to leave [her] work station." (R. 26, 44.) This implies the ability to change position *at-will*, and where an ALJ's finding and hypothetical are consistent with an at-will sit-stand option, no greater specificity is required. Miller v. Astrue, No. 11-CV-4103, 2013 WL 789232, *10 (E.D.N.Y. Mar. 1, 2013) (requirement that claimant have "option to sit-stand throughout the day" sufficient statement of frequency); Evans v. Astrue, No. 12-CV-6002, 2012 WL 6204219, *8 (W.D.N.Y. Dec. 12, 2012) (citing Thompson v. Astrue, 442 Fed. Appx. 804, 807 (4th Cir. 2011)) (requirement that claimant be able to "sit or stand alternatively" sufficient statement of frequency).

13. In light of the determination that remand is warranted based on the ALJ's failure to sufficiently develop the record with respect to Plaintiff's mental impairments, further comment on Plaintiff's remaining arguments would be premature.

14. For the foregoing reasons, the Court cannot conclude that the ALJ's determination is supported by substantial evidence. Plaintiff's Motion for Judgment on the Pleadings is granted, and Defendant's motion is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings

(Docket No. 7) is GRANTED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that the decision of the ALJ is REVERSED and this matter is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above decision;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: May 23, 2013
       Buffalo, New York

                                           /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                              Chief Judge
                                        United States District Court